IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| John W. Dewar, Jr., ) | Civil Action No. 6:11-1244-JMC -KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| Defendant. ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits ("DIB") on May 1, 2007, alleging that he became unable to work on February 15, 2007. The application was denied initially and on reconsideration by the Social Security Administration. In both determinations, the Commissioner acknowledged that the evidence showed that he was currently unable to work, but that within 12 months of onset, his impairments were not expected to remain severe enough to prevent him from performing all types of work (Tr. 69, 76). On October 31, 2007, the plaintiff requested a hearing. The administrative law judge

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

("ALJ"), before whom the plaintiff and Robert E. Brabham, Jr., an impartial vocational expert, appeared on July 27, 2009, considered the case *de novo*, and on August 12, 2009, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on March 30, 2011. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since February 15, 2007, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*)
>
> 3. The claimant has the following severe impairment: disorder of the back (20 C.F.R. § 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of sedentary work as defined in 20 C.F.R. § 404.1567(a). He can sit up to six hours during an eight hour workday, 30 minutes at a time, and stand and/or walk for up to four hours, thirty minutes at one time. He is able to lift up to ten pounds occasionally and less than ten pounds frequently and perform pushing and pulling within these limits. The claimant may climb stairs and ramps on a rare (1-5% of the day) basis and must avoid ropes, ladders, scaffolds. He is

significantly limited in the ability to reach and manipulate. He must avoid foot controls and unprotected heights, as well as hazardous or dangerous equipment, and vibration. He may perform postural activities rarely.

6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

7. The claimant was born on November 1, 1966, and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. (20 C.F.R. § 404.1563).

8. The claimant has a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404. Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 15, 2007, through the date of this decision (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

**APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff

can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **MEDICAL EVIDENCE**

In May 2007, when the plaintiff filed his application for disability benefits, he stated that he was able to go grocery shopping with his wife for 30 minutes at a time; he

5

could drive short distances (less than five miles), and pick up his daughter from school; and he tried to walk 30 minutes every day (Tr. 158). The plaintiff stated that his wife helped him bathe and put on his shoes (Tr. 158). He said that he spent most days either in bed or sitting in a recliner watching television (Tr. 158). The plaintiff reported back pain since 1982, when he was in high school, that had worsened over time (Tr. 217-20, 231-32, 262-65). In 2006, results of x-rays and MRI tests showed that the plaintiff had degenerative changes and spondylolisthesis (displaced vertebra) in his lumbar spine at L4-5 (Tr. 215-20, 262).

In January 2007, upon referral by his treating physician, Donald R. Johnson, II, M.D., the plaintiff presented to John A. Glaser, M.D., an orthopedic surgeon, for evaluation (Tr. 189-91, 215-16, 230). The plaintiff reported that he was working in the furniture industry, a physically demanding job; that his back pain had increased in the previous six months; and that it increased with physical activity (Tr. 190). The plaintiff reported that treatment had not significantly reduced his pain (Tr. 190). Dr. Glaser found that the plaintiff weighed 280 pounds at a height of six feet two inches (Tr. 190). Results of his physical examination were essentially normal (Tr. 190). Dr. Glaser stated that the plaintiff was not a candidate for disc replacement (Tr.191, 212).

The plaintiff had a discogram in March 2007 (Tr. 226-27, 260-61, 265, 267). He was assessed with degenerative disc disease, spondylolisthesis, and an annular tear in his lumbar spine (Tr. 260, 266). In March and April 2007, the plaintiff reported that pain medication helped "somewhat" to reduce his pain (Tr. 208). He reported at the end of April that his pain medication had little effect, but he needed to replace 26 stolen pills, which his doctor refused to do (Tr. 211). Dr. Johnson recommended that the plaintiff lose weight and undergo surgical intervention (lumbar fusion) (Tr. 228-29).

In May 2007, three months after his alleged onset of disability date, the plaintiff underwent a laminectomy and lumbar fusion at L4-L5, with placement of PEEK

6

cage (Tr. 194-97, 258-59). He was discharged with decreased pain and was walking by the end of the month (Tr. 195-206, 208-09, 223-25, 265). Post-surgery x-rays showed good placement of the screws and rod (Tr. 231-32, 265). By July 2007, Dr. Johnson reported that the plaintiff's fusion continued to heal, he was doing well, and he was able to begin physical therapy (Tr. 256).

Charles Fitts, M.D., an agency physician, reviewed the evidence, completed a physical functional capacity form, and determined that the plaintiff's physical condition did not preclude him from performing a range of light work activities (Tr. 247- 54). An agency psychologist reviewed the medical evidence and determined that the plaintiff did not have a medically determinable mental impairment (Tr. 233-46).

In September 2007, an MRI of the plaintiff's lumbar spine showed no evidence of residual or recurrent herniation (Tr. 295-98 ). Radiographic imaging showed that the plaintiff's fusion and hardware placement looked good (Tr. 296). The plaintiff reported increased back pain and increased use of narcotic pain medication (Tr. 296).

In October 2007, Dale Van Slooten, M.D., an agency physician, reviewed the medical evidence and completed a physical functional capacity assessment (Tr. 285-92). Dr. Van Slooten determined that the plaintiff, despite his back impairment, could perform a range of light work activities (Tr. 286-91). Judith Von, Ph.D., a state agency psychologist, also reviewed the evidence (Tr. 271-84). Dr. Von determined that the plaintiff had a substance addiction disorder caused by his use of narcotic pain medications; he had no limitations in activities of daily living or maintaining social functioning; and he had only mild difficulties in maintaining concentration, persistence, or pace (Tr. 271, 279, 283). Dr. Von concluded that the plaintiff did not have a severe mental impairment (Tr. 271, 282-83).

In May 2008, the plaintiff reported that his pain was relieved with medication (Roxicodone) (Tr. 293). Dr. Johnson reviewed an updated MRI scan of the plaintiff's lumbar spine and saw no further disc pathology or any need for more surgery (Tr. 293). Dr.

Johnson suggested that the plaintiff follow up with Mark Netherton, M.D., a pain management specialist, for evaluation and treatment (Tr. 293).

Dr. Netherton began treating the plaintiff in June 2008 (Tr. 316-33). The plaintiff reported constant pain in his back and into his left hip and leg. He denied any fatigue, joint pain, stiffness, depression, anxiety, or suicidal thoughts (Tr. 333). Dr. Netherton found that the plaintiff had full range of motion, strength, and sensation in his upper extremities; pain in the low back and buttocks with positive (abnormal) straight leg raising on the left and negative (normal) straight leg raising on the right; no specific trigger points; an antalgic gait; and normal sympathetic function in the lower extremities, with good strength and normal sensation (Tr. 327). The plaintiff reported some intermittent relief with treatment (medication and a TENS (transcutaneous electrical nerve stimulation) unit) (Tr. 316-33). A trial of spinal neurostimulation did not reduce the plaintiff's pain (Tr. 324-25).

In July 2008, William G. Kee, Ph.D., a psychologist, interviewed the plaintiff and reviewed his medical records (Tr. 305-306). Dr. Kee assessed the plaintiff with major depression, a pain disorder associated with medical and psychological factors, chronic back and leg pain, financial concerns, and a Global Assessment of Functioning ("GAF") score of 60, representing mild to no more than moderate limitations in social and occupational functioning (Tr. 306). *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders - Text Revision IV* (DSM-IV) (2000).

Between January and June of 2009, treatment notes showed that the plaintiff reported constant back pain that decreased with medication and increased with his level of activities (Tr. 311-15). Results of his physical examinations revealed tenderness in his lower back with "5/5" (normal) musculoskeletal findings in his lower back (Tr. 311-15).

In May 2009, the plaintiff was hospitalized for detoxification from narcotic pain medications (Tr. 307-10). Attending physician Eduardo Cifuentes, M.D., reported essentially normal findings on the plaintiff's mental status examination (Tr. 310) and found

8

"no significant medical problems throughout his stay" (Tr. 307). Dr. Cifuentes assessed the plaintiff's GAF score at less than 40 (serious difficulties) when he was admitted and at 70 (no more than mild limitations) upon his discharge five days later (Tr. 308, 310).

In June 2009, Scott Sauer, D.O., examined the plaintiff (Tr. 334-37). The plaintiff reported continuing back pain that was relieved somewhat with medications and use of a TENS unit (Tr. 334, 336). The plaintiff was not able to walk in a fully upright position, but he was able to get on and off the examination table without difficulty (Tr. 336). Dr. Sauer found that the plaintiff had no specific sensory or motor deficits in the lower extremities; he had negative (normal) straight leg raising in the seated position; and his lumbar spine was extremely tender to even light palpation (Tr. 336). Dr. Sauer prescribed medication and recommended aqua therapy and epidural steroid injections (Tr. 334-37).

In an examination report dated July 20, 2009, Dr. Johnson noted that he had not seen the plaintiff since May 2008, but he had reviewed Dr. Sauer's records (Tr. 338). Dr. Johnson reported that the plaintiff was ambulating with a cane, had significant spasm and limited range of motion in his back, and complained of back pain (Tr. 338). Dr. Johnson stated his opinion that the plaintiff was not employable, "given his continued pain restrictions and need for pain medication" (Tr. 338). Dr. Johnson completed a form in which he opined that the plaintiff, in an eight-hour workday, with normal breaks, could lift ten pounds occasionally, with no frequent lifting and carrying; occasionally bend at the waist; stand and/or walk less than two hours, with use of a cane at all times; sit less than two hours, with frequent and unscheduled breaks for pain relief; alternate sitting and standing for unspecified lengths of time; and push and/or pull with both upper and lower extremities on a limited basis (Tr. 341-45). Dr. Johnson further opined that the plaintiff experienced subjective symptoms, including fatigue, dizziness, and concentration problems that would limit his ability to work, and that he would miss work four or more days per month (Tr. 343-45).

9

## HEARING TESTIMONY

At the July 2009 hearing, the plaintiff testified that he lived with his wife and 16-year old daughter (Tr. 27). He stated that he continued to experience constant pain in his back and left leg; he did not experience any relief from surgery, physical therapy, or injections, but medications helped to reduce his pain somewhat (Tr. 33-36). The plaintiff testified that he could sit and stand, each for approximately 30 minutes at one time; walk approximately 50 yards at a time; and lift five pounds (Tr. 30-32). He did not use the stairs at his home very often (Tr. 33). He drove a couple of miles every week (Tr. 26). His daily activities included reading the sports page, trying to make his bed and clean the kitchen, and walking outside (Tr. 38-39). The plaintiff stated that he spent a great deal of time in a reclining chair (Tr. 39). The plaintiff testified that he had trouble sleeping and that his medications made him tired and affected his ability to concentrate (Tr. 40).

The ALJ received testimony from a vocational expert who had reviewed the file and was familiar with the *Dictionary of Occupational Titles* ("DOT") and relevant Social Security regulations (Tr. 44-56). The vocational expert testified that the plaintiff's past work was at least semi-skilled and required light exertion (Tr. 45-46) and that the plaintiff had acquired skills transferable to other semiskilled jobs (Tr. 49-50).

The ALJ asked the vocational expert to assume a hypothetical individual of the plaintiff's age, with his education, work history, and the RFC ultimately assessed by the ALJ (Tr. 47). The vocational expert responded that the individual could perform sedentary jobs such as order clerk, dispatcher, surveillance system monitor, and machine tender (Tr. 48).

## ANALYSIS

The plaintiff alleges disability commencing February 17, 2007, when he was 40 years old, due to degenerative disease in his back. He has a high school education and past relevant work as an assistant manager of a furniture store and mobile home

salesperson. The ALJ found that the plaintiff's back disorder was a severe impairment. The ALJ further determined that the plaintiff could not perform his past relevant work, but could perform a wide range of sedentary work that existed in significant numbers in the national economy. The plaintiff argues that the ALJ erred by (1) rejecting the opinion of Dr. Johnson and (2) failing to make findings concerning the plaintiff's depression. The plaintiff further contends that reversal of the ALJ's decision is warranted because of new and material evidence showing that he is disabled.

***Opinion Evidence***

The plaintiff first argues that the ALJ improperly rejected the opinion of Dr. Johnson. The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 416.927(d)(2)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in Ruling 96-2p:

11

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

Here, the only treating physician opinion evidence before the ALJ was the opinion of Dr. Johnson, the plaintiff's spinal surgeon. On July 20, 2009, Dr. Johnson reviewed the plaintiff's post-surgical pain management treatment records, conducted a clinical examination, completed a disability rating form (Treating Physician's Statement form), and prepared a narrative letter summarizing the basis for his opinions (Tr. 338-45). Dr. Johnson opined that the plaintiff, in an eight-hour workday, with normal breaks, could lift ten pounds occasionally, with no frequent lifting and carrying; occasionally bend at the waist; stand and/or walk less than two hours, with use of a cane at all times; sit less than two hours, with frequent and unscheduled breaks for pain relief; alternate sitting and standing for unspecified lengths of time; and push and/or pull with both upper and lower extremities on a limited basis (Tr. 341-45). Dr. Johnson further opined that the plaintiff experienced subjective symptoms, including fatigue, dizziness, and concentration problems that would limit his ability to work, and that he would miss work four or more days per month (Tr. 343-45). In his narrative statement, Dr. Johnson expressed the following opinion:

> This patient has an objective basis for his functional limitations. I do not feel that he is employable given his continued pain restrictions and need for pain medication. I would strongly endorse his disability. It is my understanding that he is going before [a] Social Security administrative law judge. It would be my opinion he meets all of the necessary criteria.

> We know Mr. Dewar well. He has been a very compliant good patient and has tried everything that we have asked him to do to try to improve his situation and pain. He unfortunately has a chronic problem which in my opinion was not significantly improved with spinal surgery. I suspect that because of the chronicity of the problem, and the spinal instability, the patient developed preoperative permanent nerve injury and damage which was not significantly affected by his surgery.
>
> In the future he will need ongoing pain management. We know and work with Dr. Sauer quite well and I would strongly endorse continuing with Dr. Sauer's treatment.

(Tr. 338).

The ALJ gave Dr. Johnson's opinion "little weight," stating as follows:

> There are no ongoing medical records from this doctor after May, 2008. The report from the July 2009 independent medical evaluation performed by Dr. Johnson upon referral by the claimant's attorney indicates only a cursory physical examination, noting spasm, pain, and reduced range of motion. Furthermore, the doctor's indication that the claimant is limited due to fatigue, sleepiness, dizziness, lightheadedness is not supported by the medical record.

(Tr. 19).

The plaintiff argues that the ALJ erred by discounting the opinion because Dr. Johnson had not treated the plaintiff since May 2008, 14 months prior to the date of his opinion. As pointed out by the plaintiff, the regulations provide that "the Commissioner considers a physician to be a treating physician when that physician 'provides' or *'has provided*' a claimant 'with medical treatment or evaluation and who has, or *has had*, an ongoing treatment relationship' with the claimant." *Meyer v. Astrue*, 662 F.3d 700, 705 n.1 (4th Cir. 2011) (quoting 20 C.F. R. § 404.1502). Further, the plaintiff argues that the ALJ's assertion that Dr. Johnson's July 2009 physical examination of the plaintiff was "cursory" was purely speculative and inconsistent with Dr. Johnson's report (Tr. 19, 338). This court agrees. Further, the ALJ stated that Dr. Johnson's opinion "not supported by the medical

13

record" (Tr. 19), but did not cite the medical evidence upon which she relied in making that finding.

Moreover, the ALJ's finding ignored the fact that Dr. Johnson reviewed the entire medical record before expressing his opinion (Tr. 338-45, 401). As pointed out by the plaintiff, the DDS medical consultants who reviewed the plaintiff's file at the initial and reconsideration levels in July and October 2007, did not review any of Dr. Johnson's later treatment notes and evaluation, nor did they review the treatment notes of Drs. Netherton, Kee, or Sauer (Tr. 69, 76). Notably, these consultants, who did not have access to the entire record, acknowledged that the plaintiff was currently disabled in July and October 2007, but determined that the plaintiff's condition was not expected to remain severe enough for 12 months in a row to prevent him from working (Tr. 69, 76).

Upon remand, the ALJ should be instructed to reconsider Dr. Johnson's opinion in accordance with the foregoing. Furthermore, as will be discussed below, the ALJ should also consider the opinions of treating physicians Drs. Netherton and Sauer.

***Appeals Council Evidence***

The plaintiff received pain management treatment from pain management specialist Dr. Netherton from June 2008 through May 2009 (about two months prior to the ALJ hearing) (Tr. 311-33). After the unfavorable ALJ decision was issued, the plaintiff's counsel took Dr. Netherton's sworn statement, which was submitted to the Appeals Council (Tr. 183-87, 371-89). Dr. Netherton testified that he concurred in Dr. Johnson's medical opinions and explained the basis for his opinions (Tr. 371-89).

The plaintiff switched pain management physicians in June 2009 and began treatment with another pain management specialist, Dr. Sauer, prior to the ALJ hearing (Tr. 334-37). After the unfavorable ALJ decision was issued, the plaintiff's counsel forwarded Dr. Sauer a copy of Dr. Johnson's July 2009 opinions and Dr. Netherton's October 2009 sworn statement for written comment (Tr. 370). By letter dated December 6, 2009, Dr.

14

Sauer confirmed that he fully concurred in the opinions of Drs. Johnson and Netherton (Tr. 364). Dr. Sauer's opinion was also submitted to the Appeals Council (Tr. 183-87).

The Appeals Council admitted the opinions of Drs. Netherton and Sauer into the administrative record and denied the request for review finding "no reason under our rules to review the Administrative Law Judge's decision" (Tr. 1). The plaintiff argues that the Appeals Council's decision was reversible error.

In *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), the Fourth Circuit held that the Appeals Council is not required to articulate its rationale for denying a request for review. *Id*. at 706. The Fourth Circuit then stated that when the Appeals Council receives additional evidence and denies review, the issue for the court is whether the ALJ's decision is supported by substantial evidence. *Id*. at 707. Further, the court held that when the evidence is one-sided, the court may be able to determine whether substantial evidence supports the ALJ's decision. *Id*. However, where the "other record evidence credited by the ALJ conflicts with the new evidence," there is a need to remand the matter to the fact finder "to reconcile that [new] evidence with the conflicting and supporting evidence in the record." *Id.* Remand is necessary because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder." *Id*.

The ALJ gave "some weight" to the opinions of the state agency physicians who determined that the plaintiff was capable of light work[2] (Tr. 18; *see* Tr. 247-54, 285-92). Furthermore, Dr. Johnson's finding that fatigue, dizziness, and concentration problems would limit the plaintiff's ability to work is inconsistent with the findings of two examining medical sources (Drs. Kee and Cifuentes), who found that the plaintiff had essentially mild mental limitations and normal findings on mental status examination (Tr. 305-10), and the findings of two reviewing agency psychologists, who determined that the plaintiff had, at

---

[2]The ALJ determined that, based on later submitted evidence, a residual functional capacity assessment for a range of sedentary work was appropriate (Tr. 18).

most, only mild limitations with concentration, persistence, and pace (Tr. 233-45, 271-83). The new evidence from two treating physicians, on the other hand, is consistent with the rejected opinion of Dr. Johnson, and the new evidence appears to support some of the subjective testimony of the plaintiff that the ALJ rejected as not credible (*see* Tr. 18).

The plaintiff argues that the medical opinions of Drs. Netherton and Sauer are uncontroverted by any substantial evidence of record, and those opinions, along with the opinion of Dr. Johnson, should be given controlling weight. However, this court finds that, under the authority of *Meyer*, remand is necessary for the ALJ to weigh the newly produced medical evidence and to reconcile this with other evidence previously in the record as discussed above. On remand, the ALJ should be instructed to address the weight given to the medical opinions of Drs. Netherton and Sauer and the reasons therefor, and to reevaluate the prior findings regarding the credibility and weight given the opinion of Dr. Johnson and the plaintiff's testimony in light of the newly produced evidence. *See Johnson v. Astrue*, C.A. No. 8:10-2716-RMG, 2012 WL 393257, at *4-5 (D.S.C. Feb. 6, 2012) (slip copy). This court finds that such a review is particularly important in a case such as this one where the DDS medical consultants who reviewed the plaintiff's file at the initial and reconsideration levels in July and October 2007 acknowledged that the plaintiff's condition was severe enough at that time to prevent him from working, but determined that the plaintiff's condition was not expected to remain severe enough for 12 months in a row to prevent him from performing all types of work (Tr. 69, 76).

## *Depression*

Lastly, the plaintiff asks that, if the court remands the case for further administrative proceedings, the court order the ALJ to address the evidence regarding depression. In July 2008, Dr. Kee assessed the plaintiff with major depression, a pain disorder associated with medical and psychological factors, chronic back and leg pain, financial concerns, and a Global Assessment of Functioning ("GAF") score of 60,

representing mild to no more than moderate limitations in social and occupational functioning (Tr. 305-306). The ALJ did not address Dr. Kee's assessment in the decision. Moreover, as argued by the plaintiff, the two reviewing agency psychologists who reviewed the case in 2007 did not have Dr. Kee's opinion to review (*see* Tr. 233-45, 271-83). Accordingly, upon remand, the ALJ should be instructed to consider this evidence and indicate what weight, if any, is given to the evidence regarding depression.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. § 405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

June 4, 2012
Greenville, South Carolina